IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18 CV 153

| | |
|---|---|
| TAMMY MOEHLENPAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM |
| v. ) | AND ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 10, 12). The issues have been fully briefed, and the matter is now ripe for ruling. Following a review of the record, the parties' briefs, and relevant legal authority, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

I.  Procedural History

On June 10, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.[1] (Transcript of Administrative Record ("T.") 22.) The same day, Plaintiff also filed a Title XVI

---

[1] "Protective filing refers to the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing allows an individual to have an earlier application date than the date the application is signed." Hess v. Colvin, No. 3:12-CV-1907, 2014 WL 901144, at *1 n.3 (M.D. Pa. Mar. 7, 2014).

application for supplemental security income. (T. 22.) In both applications, Plaintiff alleged a disability onset date of June 30, 2013. (T. 22.)

Plaintiff's claims were denied initially on September 29, 2014, and then on reconsideration on March 2, 2015. (T. 22.) On March 31, 2015, Plaintiff filed a written request for hearing before an Administrative Law Judge ("ALJ"). (T. 22.)

On January 20, 2017, a video hearing was conducted before ALJ Koren Mueller. (T. 22.) Plaintiff appeared in Charlotte, North Carolina, and the ALJ presided over the hearing from St. Louis, Missouri. (T. 22.) Vocational expert ("VE") Theresa Wolford appeared at the hearing. (T. 22.) Plaintiff was informed of her right to counsel but chose to appear and testify without the assistance of an attorney or other representative. (T. 22.)

On April 5, 2017, the ALJ issued an unfavorable decision. (T. 22-31.) The same day, Plaintiff requested review of the ALJ's decision. See (T. 6). Plaintiff's request was denied on June 7, 2018. (T. 6-8.)

On September 24, 2018, Plaintiff filed the instant action. See (Doc. 1).

## II. Standard for Determining Disability

An individual is disabled, and therefore eligible for disability payments, if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under this sequential evaluation, the Commissioner must consider each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At steps one and two, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy this burden at either of these steps, the ALJ will determine that the claimant is not disabled, and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015).

The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish

disability.  Monroe, 826 F.3d at 179.  If the claimant fails to do so, the ALJ must determine the claimant's RFC.  Mascio, 780 F.3d at 635.

The ALJ next proceeds to step four where the ALJ determines whether the claimant can perform his or her past relevant work.  Id.  The burden is on the claimant to demonstrate that he or she is unable to perform past work.  Monroe, 826 F.3d at 180.  If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five.  Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work.  Id.  The burden rests with the Commissioner to prove by a preponderance of the evidence that the claimant can perform other jobs that exist in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience.  Id.; Monroe, 826 F.3d at 180.  Typically, the Commissioner satisfies this burden at step five with the testimony of a VE, who responds to a hypothetical question from the ALJ that incorporates the claimant's limitations.  Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.  If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits.  Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

## III. The ALJ's Final Decision

In this case, The ALJ found that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(4) of the Social Security Act. (T. 22-31.) In support of this conclusion, the ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2. The claimant has not engaged in substantial gainful activity since June 30, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: major depressive disorder, posttraumatic stress disorder, panic disorder and carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps or stairs and can only occasionally climb ladders, ropes and scaffolds. The claimant can have occasional exposure to concentrated fumes, odors, dusts, gases and poor ventilation. She is limited to simple, routine tasks, involving simple work-related decisions with few work place changes and

no fast-paced productivity requirements. She can have occasional interaction with supervisors and the general public and frequent interaction with coworkers.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 17, 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(T. 22-31.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached her decision based on the correct application of the law. Id.

V.   Analysis

   A.   **The ALJ properly accounted for Plaintiff's panic attacks.**

Initially, Plaintiff argues that the ALJ erred by failing to account for the vocationally limiting effects of her panic attacks. Pl.'s Mem. (Doc. 9) at 4-9. Plaintiff contends that the ALJ failed to explain why time off task and/or absences for her panic attacks, in addition to the physical and emotional symptoms of the attacks, were not included in the RFC. Id. at 9.[2]

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7. In formulating an RFC, the ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his or her conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis,

---

2 In support of this argument, Plaintiff cites to treatment records prior to her alleged disability onset date of June 30, 2013. Pl.'s Mem. (Doc. 9) at 5-7, Plaintiff, though, was apparently still working at the time. See (T. 56-57).

"[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1.

Here, at step two the ALJ found that Plaintiff's panic disorder was a severe impairment because it more than minimally interfered with her ability to perform basic work activities. (T. 24.) See Diane S. P. v. Berryhill, ___ F.3d ___, 2019 WL 1879256, at *24 (E.D. Va. Mar. 21, 2019).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (T. 25.) In support of this conclusion, the ALJ found that Plaintiff had moderate limitations in interacting with others. The ALJ noted that Plaintiff reported being anxious when going out in public, problems getting along with others because of her anxiety, and being able to get along with authority figures as long as they were not disrespectful to her. At the same time, Plaintiff reported talking with her sisters and going shopping in public.

In addition, the ALJ found that the evidence suggested Plaintiff had no problems adapting or managing herself; while she reported problems with anxiety, she was able to go out in public and reported no problems with personal care tasks. (T. 26.)

In fashioning Plaintiff's RFC, the ALJ found that Plaintiff was able to

9

perform light work and further that she was limited to simple, routine tasks involving simple work-related decisions with few workplace changes and no fast-paced productivity requirements. (T. 26.) The ALJ determined that Plaintiff could have occasional interaction with supervisors and the general public and frequent interaction with coworkers. (T. 26.)

In reaching these conclusions, the ALJ reviewed the evidence thoroughly, making specific reference to Plaintiff's anxiety. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.

The ALJ noted that while Plaintiff had been treated for mental impairments, that treatment was conservative and had yielded many unremarkable findings, such that restrictions greater than the range of light work in her RFC were not necessary. For example, during a visit with her primary care physician in July 2013 shortly after the alleged onset date, Plaintiff was diagnosed with a cervical strain and carpal tunnel syndrome, but the remainder of her physical exam was normal. (T. 27.)

Further, Plaintiff twice sought treatment at the hospital for chest pain. Examinations indicated that Plaintiff did not have a heart condition, and that

the pain was attributable to anxiety. (T. 27). However, the ALJ found that information from other records did not indicate additional limitations should be included in Plaintiff's RFC. For example, when Plaintiff attended a consultative exam in September 2014, she advised the provider that she had been to the emergency room for anxiety related chest pain "a few times" and reported anxiety attacks, but appeared to be in a good mood and her mental status was generally unremarkable. (T. 27-28).

In addition, during a clinical assessment, Plaintiff reported only occasional panic attacks. She stated that medication did not help her, though she was taking only a very small dose of medication as needed. (T. 28). While Plaintiff's mental status exam showed some anxiety and restless motor activity, her findings were otherwise normal. (T. 28.)

The ALJ also evaluated other evidence and opinions. The ALJ gave little weight to the opinion of the State agency medical consultant, who endorsed a range of medium work, and some weight to the opinions of the State agency psychological consultants, who opined that Plaintiff could perform simple tasks in a low stress environment with minimal social demands. This second opinion, the ALJ found, was generally consistent with the record as a whole and the nature of Plaintiff's anxiety. (T. 28-29.)

Further, the ALJ gave great weight to the opinion of a consultative examiner, who personally examined Plaintiff and was a specialist in mental

11

health impairments. The findings of that examiner, the ALJ noted, were generally consistent with the findings of the State agency psychological consultants and the record as a whole. (T. 29).

The ALJ considered, but gave little weight to, the statements of Plaintiff's former coworker, Plaintiff's friend, and Plaintiff's son, finding them to be inconsistent with the medical evidence and treatment. (T. 29).

In sum, the Court finds that the ALJ thoroughly reviewed the information regarding Plaintiff's panic attacks and concludes that the ALJ's finding regarding Plaintiff's ability to perform a limited range of light work, as stated in the RFC, is supported by substantial evidence.

### B. Lucia does not provide a basis for relief.

Next, citing Lucia v. S.E.C., 585 U.S. ___, 138 S. Ct. 2044 (2018), Plaintiff argues that, at the time of the decision, the ALJ did not comply with the Appointments Clause. Pl.'s Mem. (Doc. 9) at 9-12. Plaintiff contends that ALJs are inferior officers that must be appointed by the President, Courts of Law, or Heads of Departments. Id. at 9.

In Lucia, the Supreme Court held that the ALJs of the Securities and Exchange Commission are "Officers of the United States, subject to the Appointments Clause." 138 S. Ct. 2055. The Court noted that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." Id. (quoting Ryder v. United

States, 515 U.S. 177, 182-83 (1995)). Because Lucia made such a timely challenge, a new hearing before another ALJ was ordered. Id.

In this case, assuming the holding in Lucia applies to Social Security ALJs, Plaintiff did not make a timely challenge at her hearing before the ALJ. See (T. 40-76). Therefore, Plaintiff has forfeited any right to relief based on Lucia. See Jenkins v. Berryhill, No. 1:18-CV-00050-MR, 2019 WL 1317730, at *3 (W.D.N.C. Mar. 22, 2019) ("Plaintiff has forfeited [the Lucia] issue by failing to raise it during her administrative proceedings."); Garrison v. Berryhill, No. 1:17-CV-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings").

## VI. Conclusion

Considering the foregoing, Plaintiff's motion for summary judgment (Doc. 10) is **DENIED**, and the Commissioner's motion for summary judgment (Doc. 12) is **GRANTED**.

Signed: September 27, 2019

W. Carleton Metcalf
United States Magistrate Judge